Error.

E. W. WARD v. THE WILMINGTON AND WELDON RAILROAD COMPANY.

*Negligence—Railroad—Right-of-way.*

A railroad company is not negligent in failing to cut down bushes or weeds on the right-of-way beyond the portion over which it is exercising actual control for corporate purposes; but is required to keep the right-of-way clear of such growth to the outside of the side ditches on either side of the track.

MERRIMON, C. J., and DAVIS, J., dissenting.

This was a CIVIL ACTION, tried at Fall Term, 1890, of the Superior Court of PENDER County, before *Armfield, J.*

The issues submitted, with the responses by the jury, were as follows:

"1. Did defendant, by its negligence in moving its cars and engines, kill the horse of the plaintiff? Yes.

2. If yes, what damage has plaintiff sustained thereby? Eighty-eight dollars."

There was testimony offered on the part of the plaintiff tending to show that, within six months before the beginning of this action, the defendant had killed the horse of the

plaintiff by running against him in the day-time with a freight train running on defendant's road, and also testimony as to the value of the horse. Defendant introduced the engineer, fireman and others who were on the train at the time of the killing of the horse. They testified that the train was a long and heavy freight train running rapidly and with great momentum; that the engineer in charge of the train was on the vigilant lookout for stock in front of the train, but that weeds and bushes had grown up close to the track of defendant's road at that point within two feet of the track as high as plaintiff's horse; that the horse was concealed from the engineer by these weeds and bushes until the train was close upon him, when he suddenly emerged from the weeds and bushes on to the track; that the engineer, immediately on seeing the horse, he being on the lookout to the front, blew down-brakes, blew the cattle alarm and reversed his engine; that the brakes were applied, but that the horse was so close to the train that all these efforts were unavailing, and the train ran over the horse and killed him.

Defendant asked his Honor to instruct the jury, "If the jury believed that the engineer, as soon as he could, by looking out and being on the watch, discovered the horse and then used all the efforts at his command to stop the train, and could not do so in time to keep from striking the horse, then the defendant was not guilty of negligence, and plaintiff could not recover."

His Honor told the jury that this would be true unless the defendant had negligently allowed bushes and weeds to grow on its right-of-way so close to its track that the horse was concealed thereby until it was too late to stop the train and prevent his destruction.

Defendant further asked his Honor to instruct that, "If the jury should believe that the engineer was prevented from seeing the horse, or would have been prevented from seeing the horse, had he been on the careful lookout, by the weeds

and bushes growing within two feet of the ends of the cross-ties on the side of the road on which the horse was killed, and the said bushes were three or four feet high, then the *prima facie* case in favor of the plaintiff would be rebutted, and jury should find first issue in favor of defendant."

The substance of the instruction given is embodied in the opinion of the Court.

There was a verdict for plaintiff. Defendant moved for a new trial on account of the refusal of the Court to give the instructions asked for, and for alleged error in the instructions given.

No counsel for plaintiff.

*Mr. A. W. Haywood,* for defendant.

AVERY, J.: It is settled law in this State that if an engineer in charge of an engine sees, or can, by keeping a careful outlook, see a cow or horse upon the track in his front, it is his duty to stop the train, if he can do so without peril to the passengers and property under his charge, by the use of all the appliances for checking the speed at his command. *Carlton* v. *Railroad*, 104 N C., 365; *Wilson* v. *Railroad*, 90 N. C., 69; *Snowden* v. *Railroad*, 95 N. C., 93; *Bullock* v. *Railroad*, 105 N. C., 180; *Deans* v. *Railroad*, 107 N. C., 686.

If, by the exercise of ordinary care, the engineer can discover that an animal is greatly frightened and is running apparently excitedly and wildly beside and near the track, or continues on and sometimes off it, it is the duty of the engineer to "slacken the speed, keep the engine under his control," and, if necessary, "stop it," until the animal is out of danger. *Wilson* v. *Railroad, supra.*

" When the cattle are quietly grazing, resting or moving near the track—not on it—manifesting no disposition to go on it, the speed of the train need not be checked." *Wilson* v. *Railroad, supra.*

We have thus stated the general rules laid down by this Court in reference to the negligence in injuring live stock, in order the more intelligently to discuss the instruction given by the Court in case at bar, that even though the engineer could not, by keeping the most vigilant outlook, discover that the plaintiff's horse was in the vicinity of the track in time to stop the engine, yet "*it was the duty of the defendant to keep its right-of-way near its track reasonably clear of weeds and bushes which might conceal stock approaching its road until it was too late to stop a train and prevent their destruction,*" and that "if they (the jury) *believed* that the horse was killed, because he was so concealed by weeds and bushes, which the defendant had negligently permitted to *grow up in close proximity to the track,*" that the engineer could not see in time to avert the injury, the defendant's negligence was the proximate cause of it.

We take notice of the fact that, whatever may be the privilege of railroad companies to exercise dominion over their whole right-of-way, the universal custom has been to allow the abutting owner, whose land has been taken for the use of the public, to cultivate up to the side-ditches that are kept open for the purpose of proper drainage by the company. While we concede that it is the duty of the corporation in constructing its road to cut down the large trees that might fall on or be thrown upon the track, we would be loath to give our sanction to any ruling that would make it incumbent upon them, in order to protect themselves from liability, to take actual possession of any portion of the right-of-way not needed for corporate purposes proper, namely, to remove from it corn, grain, high grass, weeds or bushes, that may spring up immediately outside of the ditches and grow upon cultivated land high enough to conceal a horse or cow from the view of an engineer who is approaching with a moving train.

It is important that every principle of law to which the conduct of the citizen is to be made to conform, should mark out the line of his duty with reasonable certainty. It is essential, in order to insure the transportation of passengers and freight with the dispatch and promptness that will meet the wants of a commercial people, that the managers of railroads should have a definite idea of the duties and liabilities of the companies, and should be able, by using proper precaution, to provide against it without subjecting the public to serious inconvenience or delay. If, therefore, the Judge had told the jury that it was negligence to suffer weeds and bushes to grow up in or upon the banks of the ditches of which the companies assume actual control and dominion, to a sufficient height to obstruct the view of persons or animals from an approaching engine, he would have fixed a known and well-defined boundary line up to which the corporate authorities would be required to remove such obstructions, and would, at the same time, have held them bound to discharge a duty which is but the exercise of ordinary diligence on their part. To burden these corporations with the further duty of removing such obstructions beyond the territory of which they assume actual control for corporate purposes, is not only to license but to compel them, for their own security, to cut down corn or grain, as well as weeds, when it springs up so high as to hide cattle from view, and thus enable the engineer to see whether they are grazing quietly or moving about frantically as a train draws near to them. The Court below laid down the indefinite rule, that it was negligence to allow weeds or bushes to grow "near to," or "in close proximity" to the track; he left the precise distance to which the duty extended so vague and uncertain that railroad companies cannot provide against liability, however watchful their servants may be, except by assuming actual control and keeping clear of corn, grain, grass, weeds and bushes the whole right-of-way, especially

where there are curves so sharp that the line of vision of
the engineer in looking to his front would cross the right-of-
way at or near its outer boundary line. "Near," in com-
mon parlance, is understood, and by lexicographers is defined,
to mean either "close" or "at no great distance;" while "in
close proximity," or "in the immediate vicinity," are equiva-
lent terms, and either of the expressions might have been
understood by the jury as a declaration that it was negli-
gence to leave weeds or bushes that would hide cattle from
view anywhere on the right-of-way. One hundred feet
from the center of the railroad (the ordinary limit of the
right-of-way) would be considered by men of intelligence as
at no great distance from, or in the immediate vicinity of, a
track, and the instruction was, therefore, misleading; unless
we intend to enjoin upon railroad companies the duty of
ousting the owners of the abutting land and seeing that it
is kept clear of corn-stalks or weeds, which under good cul-
ture would, after the crops are gathered, hide from view cat-
tle on the right-of-way in the immediate vicinity of the
track. In order to provide against liability under the rule
laid down by his Honor, railroad companies must either
assume such control of the right-of-way, or the fast trains by
which the companies have contracted for the expeditious
transportation of the mails, persons and property must stop
and "beat the bushes" at every curve in the line where the
soil is rich, in order to ascertain whether a cow or horse can
be made to emerge from them before proceeding on their
important mission.

Where bushes are allowed to grow in or inside of the
ditches along the portion of the right-of-way of which the
corporations assume actual control, so as to obstruct the view
of an engineer on an approaching train, a greater degree of
care does devolve upon the company, just as we have said in
*Hinkle* v. *Railroad* (decided at this term), that where a com-
pany suffers cars or other obstructions to be placed on a side

track so as to shut off the view of a moving train from a traveller driving towards a crossing on the line, it is negligence in an eng'neer to fail to give notice of his approach. 19 Am. & Eng. R. Cases, p. 312, notes and authorities cited ; *A., G. & C. R. R. Co.* v. *Moody,* 45 Am. & Eng. R. C., p. 524, and notes; p. 527, *et. seq.*

We think that the Court below erred in fixing upon corporations the duty of removing obstructions, such as weeds or corn-stalks, that are incident to the ordinary course of husbandry outside of the portions of the right-of-way, including side tracks under the actual control of the companies. It is, of course, the duty of the company to construct the road properly and in such a manner as will not expose travellers to needless dangers. It is incumbent on them, as we have said, to remove all trees from the right-of-way, and also any structure that is liable to fall upon passing trains or upon the track so as to obstruct it. But in our case, the question is as to their duty in reference to the right-of-way outside of the track and ditches, and after the completion of the road in reference to weeds and bushes that may spring up while the land is being cultivated with ordinary care.

There was error, for which the defendant is entitled to a new trial.

CLARK, J.—concurring : It is the duty of a railroad company, as to its patrons, to keep the road-bed in good condition, and for that purpose to keep. enough of its right-of-way clear to prevent accident from trees or limbs falling upon its track. It owes no duties as to the condition of its right-of-way or of its track as to others, except the statutory duty as to crossings. If a trestle is so defective that a foot-passenger who chooses to walk thereon, instead of in the highway, falls through and is hurt, would the company be liable? Or

if a dead tree left standing on the right-of-way falls and kills stock pasturing there, must the company respond in damages? Or suppose stock frightened by the whistle or the noise of the train fall into a ditch on the right-of-way, must the corporation pay? I wot not. If accident from these causes occurs to those to whom the company owes duties, it would be liable; but it is no part of its duty to furnish a safe foot-path for people or safe pasturage for cattle. If the man or the cattle are on the track, it is the duty of the company to avoid injury to them if by the exercise of a proper lookout and care it can do so. But the principle goes no further. There are in this State about 3,500 miles of railroad, and every year extends the mileage. If these companies are guilty of negligence when they do not keep their right-of-way, thirty-five hundred miles in length and two hundred feet wide, shrubbed, so that a piney-woods cow or a razor-back hog may always be visible thereon, or in default of that are guilty of negligence if they do not slacken speed and. "beat the bushes" whenever high enough and dense enough to conceal the recumbent forms of those interesting animals, who otherwise might be startled from their slumbers and rush upon the track, then the duty required of engineers and the expense imposed upon the companies will *not* be "trivial." The railroads own the right-of-way. It belongs to them for the purposes of their traffic. All that can be required of them, as to others than its passengers and freight, is the good old rule that it *use* its own in such manner as not to injure others. It is not required to put its track or right-of-way in good condition for the safe use of others who pay nothing to them to enable them to do so. In those cases where railroads have been held liable for fire originating on their right-of-way, the negligence was not in allowing the grass to grow there—they are not expected to keep the right-of-way plowed up—but in using defective spark-arresters, or negligently using them, so that fire is com-

municated to the inflammable grass or matter and thence passes to the property of others which is thereby destroyed. In the present case the prayer for instruction, that if "the engineer did not, and by the exercise of a diligent lookout could not, háve seen the stock on the track in time to avoid the injury, the issue should be answered in favor of the defendant," was warranted by Carlton's case, 104 N. C., 365, and other precedents, and should have been given in the form asked, without the modification made by the Court below.

MERRIMON, C. J. (dissenting): In this State a railroad company is not required to enclose its railroad by fence or otherwise, and, hence, it is not regarded or treated in law as a trespass if the live stock of farmers and others, at large in the forests or fields, wander upon its road or graze upon its right-of-way. If such live stock so wandering shall be negligently killed by its moving locomotives or trains, it will be answerable to the person whose property shall be so injured in damages. Indeed, the statute (*The Code*, § 2326) prescribes that such killing of stock shall *prima facie* be negligently done, and the burden of proving the absence of negligence in such case is put upon the railroad company. Such company is bound to reasonable care and diligence in preventing such injuries It is, therefore, its duty to keep its roadway in such reasonable condition as will prevent the killing of stock, and, as well, to prevent possible injury arising therefrom to passengers and freight passing over its road, and injury to its own property. It is negligence on its part when it fails to do so. To prevent such injuries it is bound to keep its road-way, as far as practicable, free from such things as will obstruct the view of the engineman looking ahead of the moving train. He should be able to see stock of all kinds on the road or the road-way, in order that he may be able to sound the danger alarm as early as. practicable and

frighten the stock away, and to put his engine in condition to stop the train promptly.

If bushes, weeds, grass and the like are permitted to grow upon the road-way unrestrained, they not infrequently, particularly where the soil is rich, grow so high and thickly as to hide the animal grazing there, and prevent the engineman from seeing it until the engine is almost upon it. He then sounds the alarm, this and the rushing train alarm the animal and it at once springs upon the track, is killed, the train may be thrown off the track, passengers killed or wounded, or freight injured or ruined. All this may easily happen—has happened. It may be easily prevented by keeping the road-way clear from bushes and high weeds that grow thickly. But for such growth, the stock would generally be seen in ample time to frighten them off or stop the train, and thus sometimes prevent damage very serious in its extent and nature.

The cost of keeping the road-way clear is trifling compared with the loss occasioned by failing to do so. Indeed, one of the very purposes of the broad road-way allowed to railroad companies is to prevent injuries like those mentioned. It is expected and intended that it shall be kept reasonably clean and free from all such things as will give rise to injury and danger. Hence, it has oftentimes been held that it is negligence to allow dry grass to remain on the road-way, or dry decaying cross-ties and the like to remain there, because they easily take fire, and thus frequently spread devastation.

In possible cases, no doubt, it may be that the road-way can not be kept clear, but such cases are not general nor common. Nor is this any reason why it shall not be done when practicable. It is said that such a requirement will drive the railroad company to assert its right against farmers and others who are generally allowed, as a matter of favor, to cultivate the land freely and closely to the road track. This is an unfounded apprehension. Stock are not allowed to go at

large in the fields where corn, wheat, rye, tobacco and the like grow, and there is, hence, no danger arising from cattle straying in the cultivated fields.

In the present case, if the bushes and grass had not been permitted to grow so high and stand on the road-way, the possibility, the strong probability, is that the animal would not have been killed. But for the bushes and grass the engineman might—would—have seen the animal long before he did and frightened it away, or he might readily have slackened the speed of the train, or, if need be, stopped it. It was fortunate that the train was not thrown from the track and greater damage done. I cannot hesitate to say that, in my judgment, the defendant was justly chargeable with negligence, and that the charge of the Court to the jury was reasonable and just.

DAVIS, J. Concurred in the dissenting opinion of the Chief Justice.

*Per curiam.*                                Error.