## SIMPSON v. ENFIELD LUMBER COMPANY.

(Filed December 16, 1902.)

NEGLIGENCE—*Railroads—Fires—Logs and Logging—Damages.*

>  Where a person sells standing timber to a lumber company, giving it the right to construct a railroad to remove the same, the company is not liable for damage caused by fire communicated by its engine, if properly equipped and operated.

CLARK and DOUGLAS, JJ., dissenting.

ACTION by W. P. Simpson against the Enfield Lumber Company, heard by Judge *George H. Brown* and a jury, at April Term, 1902, of the Superior Court of HALIFAX County. From judgment for the plaintiff, the defendant appealed.

*E. L. Travis.* for the plaintiff.
*Day & Bell,* and *T. N. Hill,* for the defendant.

COOK, J.   On the 6th day of August, 1900, plaintiff sold and conveyed by deed to the defendant, in consideration of $2,000 paid him, all the timber upon his tract of land (583 acres) measuring ten inches and above in diameter at the stump, and granted to defendant the right "to construct, maintain and use such roads, tramways and railroads * * * on and upon said land, as it may deem necessary for cutting and removing said timber * * * and shall have the right and privilege of locating said road * * * and the use of such trees, undergrowth and dirt as may be necessary to contsruct and maintain the same * * * that said party of the second part shall have the term of one year from date of deed within which to cut and remove said timber."

Pursuant to the provisions of said deed, defendant company entered upon said land, constructed its railroad, cut and removed timber, and on September 14, when the train was

making its last load of timber from the land, a fire origi-
nated on said railroad "right at the track, right on the side,
most by the tie," shortly after the engine had passed, and
thence spread to and ignited plaintiff's woods (lying on both
sides of the track), burning the unsold timber and under-
growth, and this action is brought to recover damages for such
burning.    Verdict and judgment in favor of plaintiff, and
defendant appealed.

Plaintiff admits that the engine was in proper order,
equipped with proper spark arrester, and that there was no
negligence in that respect.    But the ground of negligence
upon which he relies is that an accumulation of leaves, brush
and combustible material was permitted by defendant com-
pany to be and remain upon the right of way and near the
right of way, and when the track was constructed, instead of
carrying off this combustible material, defendant company
piled it up along side of the track and in dangerous prox-
imity to it, and that sparks fell upon such and ignited the
same, which communicated the fire to his land, causing dam-
age complained of.

There is only one witness, Candice Williams, who testi-
fied to the origin of the fire, the substance of which is above
quoted.    She says she was 200 yards off and saw two little
puffs of smoke rise up after the engine passed.    She further
testified that she was on that track a great deal of the time,
and she had to pass backwards and forwards, and saw the con-
dition of it before the fire and how it was laid down; "it was
just cut down place enough for the train to go over, and then
put down the ties, and just ran the track any way.    There
was nothing in the world taken away, just put the trees and
bushes out of the way so the train could go along; the rub-
bish and things were lying all along up and down the sides.
They never raked out anything in the world, just laid the
cross-ties right on top of it."    It appears that it was a tem-

porary structure, and was in use less than two months. No one saw any sparks emitted from the engine, nor did any one know positively that any were emitted, nor that the fire caught in the rubbish or that there was any rubbish where it caught; but the circumstances furnished sufficient evidence to warrant such a finding of fact.

The material question involved in the case on appeal is raised by the second, fifth and twelfth exceptions. The second and fifth are taken in the refusal of the Judge to non-suit the plaintiff, and the twelfth to the following part of his charge to the jury: "If the defendant permitted the brush and combustible material to accumulate on its road-bed and a fire was communicated to the same by its engine and burnt over the plaintiff's land, then it would be negligence, and you will answer the first issue, 'Did the defendant negligently and wrongfully burn the plaintiff's timber, as alleged in the complaint?' 'Yes.'"

So the question raised is one of construction of the contract: Upon whom did the duty rest under its terms of providing against fire?

The principle of eminent domain is not involved in this contract, nor in this case on appeal. No franchise is claimed, nor was any exercised. For his own private purposes, an individual has as much right to construct, equip and operate a railroad for doing his own hauling as he has to use horse or other power for such purposes. Under their contract, defendant acquired no right of property in the land or right of control or possession thereof, other than for the use therein expressed. Plaintiff knew when he made the contract that fire was necessary for generating steam in running the locomotive upon the railroad, and must be deemed to have had notice of the probable danger from sparks necessarily emitted from an engine; and, having retained absolute control and possession of all the land lying adjacent to the track (as well

as to that upon which the track laid, except so far as it was in use for the train and maintenance thereof), it was his duty to have protected his adjacent land from the sparks and spread of fire.  The contention of plaintiff is based upon the theory that the rules applicable to incorporated railroad companies (*quasi* public corporations—common carriers) apply to defendant company; but they do not.  *Quasi* public corporations, with their right of eminent domain, have an easement in all the land condemned for right of way, and have the right to enter thereon when needed for their use, and, even when not needed for their use, they have the *right* to enter in order to remove whatever may be thereon, which would endanger the safety of its passengers, or which might, if undisturbed, subject it to liability for injury to adjacent lands or property.  *Ward v. Railroad,* 109 N. C., 358, and 113 N. C., 566; *Shields v. Railroad,* 129 N. C., 1. Wherefore such corporations, having such right of entry upon and control over *their* right of way, are held liable if grass and inflammable material are allowed to negligently accumulate thereon and become ignited from sparks, causing damage to adjacent land owners by the spreading of the fire. *Black v. Railroad,* 115 N. C., 667; *Shields v. Railroad, supra.*

Under defendant's contract, it had no right of way of specific width.  Its domain and control extended no further than to put down its track on plaintiff's land and run its trains over it, and to use the ground in removing the timber and loading it on the cars, and such as was necessary in cutting and removing the timber from the land, and the use of such trees, undergrowth and dirt as would be necessary in constructing and maintaining its road.  No right is given it to enter upon the lands for the purpose of cleaning the rubbish therefrom; the rubbish belonged to plaintiff; and having no right to remove the same in cannot be held liable for its remaining there.

But it may be argued that it cut and put rubbish there, and therefore is liable for its being there. Be that so, yet it had a right to do that much, but had no right to do more without subjecting itself to an action of trespass. It had no defined rights of way under its contract, for which it assumed any liability. Its duty under the contract was to so use its property as not to injure the property of plaintiff, and this the defendant did by properly equipping its machinery and *operating* it in a prudent and careful manner. Plaintiff entered into this contract with full knowledge of the dangers incident to running a locomotive across his land. He well knew of the condition of the woods through which the track would be constructed and of the inflammable matter which had accumulated thereon, and would thereafter be likely to accumulate. So, the duty under the contract rested upon plaintiff to protect his property, and not that of defendant company. Having failed to provide against it, plaintiff became his own insurer and assumed the risk rather than go to the expense of cleaning off or firing against the sparks which would probably escape from the engine.

Under this express contract between two private parties, no duty arises from one to the other, except such as appears in terms or necessarily arises by implication from its context. And it nowhere appears therein that the defendant company obligated itself to assume the control and liability of a right of way, such as is imposed upon a public railroad corporation. A public railroad corporation goes where it is licensed by law, carrying the dangers incident to its operation with it, even in spite of the protest of a landowner whose land it condemns and uses; while, as between the parties to this contract, the defendant company ran its locomotive over plaintiff's land with his consent, in order to enable defendant company to carry out a contract made with plaintiff, which en-

abled plaintiff to sell his timber and defendant company to purchase it.

There is no provision in the contract which imposes, by expression or implication, upon defendant company the duty of cleaning off the rubbish either from its track or the land adjacent to it, nor does it appear therefrom that it was in the contemplation of the parties that defendant company should assume any liability on account of the condition, foul or otherwise, of the plaintiff's land. If such had been their intention it ought to have been expressed. As it is not expressed, it can not be inferred; for defendant company might have refused to enter into such a contract and declined to purchase the timber. The rule of so using one's own property as not to injure the property of others, was complied with by defendant company in using a properly equipped engine and operating it carefully and in a prudent manner, which is admitted to have been done.

There is error in the instruction excepted to, and in not sustaining the motion to nonsuit.

New Trial.

DOUGLAS, J., dissenting. I can not concur in the opinion of the Court, because it is based upon what seems to me an erroneous principle of law. The opinion holds that it was error in the Court below to give the following instruction: "If the defendant permitted the brush and combustible material to accumulate on its road-bed, and a fire was communicated to the same by its engines, and burnt over the plaintiff's land, then it would be negligence, and you would answer the first issue 'Yes.'" It is admitted that this instruction would be correct if the defendant were a regular railroad company; but I fail to find any distinction either in principle or precedent. On the other hand, some authorities hold private railroads to a higher degree of responsibility than those that are

public, on the ground that the latter have a public license to operate. I do not think that makes any difference. The principle of eminent domain is in no way concerned. The power of condemnation is given to railroad companies simply to enable them to acquire the lands necessary for their construction. They may acquire such lands by purchase; and it is evident that the law deems this the proper method to pursue, as it permits the condemnation of land only in the event of the railroad company being unable to agree with the owners for its purchase. The Code, Sec. 1943. Moreover, by condemnation a railroad in this State can never acquire more than an easement in the land, while by deed or grant it may acquire any interest therein, including the absolute fee. The defendant is a corporation, but whether it had the chartered right to build a railroad is immaterial to this question, as it entered upon the plaintiff's land admittedly under the contract set out in the record.

It is contended that the defendant owed no duty to the plaintiff, inasmuch as it did not contract to keep its road-bed clear. I am not aware of any statute requiring an ordinary railroad company to keep its track clear of combustible matter. It is held by the Courts with practical unanimity that a failure to do so is evidence of negligence, or in certain cases may be negligence *per se*. This is simply one phase of the rule of the prudent man. Would a man of ordinary prudence, operating a railroad through his own land, permit the track to become so foul as to be in constant danger of catching fire from coals dropping from the engine, when the probable result of such fire would be the loss of a large amount of valuable timber? Would a man of ordinary prudence pile up leaves and other combustible matter near his house and adjoining the place where hot ashes are habitually thrown out? Would he have the right to pile them away

from his own house, but in a dangerous proximity to another's house and ash-pile ?

The fact that the engine was properly equipped with a spark arrester has little or no bearing upon the question. Where the roadbed itself is covered with combustible matter, the danger is not so much from the sparks that come out of the smoke-stack as it is from the live coals that drop from the ash pan. In such cases, the danger from the latter is much greater on account of the larger size of the coals and their greater capacity to retain and communicate heat. Of course they are not thrown as far as sparks, and in fact can not well get beyond the ditches. Ordinarily they fall between the rails, but, when the engine is rapidly rounding a curve, they may be thrown beyond the rails and down an embankment, if there happen to be one. This danger may be increased or lessened by use of the dampers at each end of the ash pan; but these dampers must necessarily be controlled to a great extent by the needs of the engines. The only safe way is to clean off the road-bed, and I see no reason why in this particular a lumber road should not be held to the same degree of care as an ordinary railroad. They both use the same dangerous agency, causing the same character of loss; and in both cases the danger can be avoided by the same means involving the cheapest labor and the simplest tools. A coal from one is as dangerous as a coal from the other, and a common hand with a rake or a hoe can clean off one as easily as he can the other. There may be some difference as to the width of the right of way, but that does not affect the principle.

In the case at bar, the defendant was evidently in full possession of its track or roadway and ditches, which constituted its right of way. These, I think, it was required to keep clear of combustible matter. I do not think it could be required to clean up the land beyond its ditches, but at the same time it did not have the right to pile up combustible mat-

SIMPSON *v.* LUMBER CO.

ter in such immediate proximity to its track as to be in constant danger of being set on fire by its engine.

I can not find any case directly in point, nor is any cited by the Court. In *Garrett v. Freeman,* 50 N. C., 78, the defendant was held liable for damage caused by fire escaping from a log pile he was burning on his own land. Judge Pearson, speaking for the Court, says: "A prudent man would not permit a log pile to be made so near the fence (from three to five yards), with a dead pine between the pile and fence, nor would he permit fire to be set to it without having the trash raked from around it." In *Robeson v. Morgan,* 118 N. C., 991, it was held that the plaintiff, although having no cause of action under The Code, might recover as at common law for negligently permitting fire to escape. In 2 Shearman and Red. on Neg. it is said in section 688: "One who uses a steam engine on his own land ought to use the ordinary means for confining sparks, especially if he burns wood; and he is liable if, for want of such precautions, the sparks set fire to a neighbor's property. He is also bound to use ordinary care to keep his own grounds in such condition that any fire set thereon by the engine shall not be communicated thence to adjacent premises."

From reason and analogy, if not from direct authority, I am compelled to dissent from the opinion of the Court.

CLARK, J., concurs in the dissenting opinion.