W. L. WILSON v. NORFOLK & SOUTHERN RAILROAD COMPANY.

*Railroads—Negligence in killing stock—Animals frightened by approaching train—Duty of engineer.*

1. Where an action against a railroad company for damages in killing plaintiff's mule, is brought within six months after the accident, the fact of such killing (nothing further appearing) is *prima facie* evidence of defendant's negligence; and the burden of repelling the presumption is upon the company.

2. The court charged the jury upon the evidence in this case: (1) If the engineer saw, or could have seen by vigilance, the plaintiff's mule upon the track a quarter or half mile ahead, and could have stopped the train in time to avoid the accident, the company is guilty of negligence: (2) If after thus discovering the mule, and it left the track a quarter of a mile ahead of the train, and the engineer had reason to believe that it was no longer in danger, and afterwards the mule ran upon the track a second time and was killed, then the company is not guilty of negligence, unless the engineer could, by the use of the appliances at his command, have stopped the train in time to prevent the injury; *Held*, no error.

3. The duty of engineers in the careful running of trains, when cattle or other stock are on the track and become frightened by an approaching train and run off and on or near the track, pointed out by MERRIMON, J.

(*Pippen* v. *Railroad*, 75 N. C., 54; *Clark* v. *Railroad*, 1 Winst., 109; *Jones* v. *Railroad*, 70 N. C., 626; *Farmer* v. *Railroad*, 88 N. C., 564, cited and approved).

CIVIL ACTION tried at Fall Term, 1883, of CURRITUCK Superior Court, before *Avery, J.*

The plaintiff claims damages alleged to have been occasioned by the running over and killing his mule by defendant's train. The issues submitted were, first, did defendant negligently kill the mule? and secondly, what was its value? The jury responded in the affirmative to the first issue, and fixed the value of the mule at one hundred and seventy-five dollars.

On the trial, the plaintiff testified in his own behalf that on the first of January, 1883, about 12 or 1 o'clock in the day, his mule got upon the defendant's railroad track and was killed by a train. A mule could be seen three quarters of a mile at the

place where his mule was killed, the track being straight and the country open. Soon after the accident the witness went on the road and saw fresh tracks where the mule got on the road and where it ran down the road, about three hundred yards, to a culvert, and then turned and ran seventy-five or a hundred yards towards the train, and then back about forty .feet. One of its legs was crushed, and there were indications that it had been dragged thirty or forty feet. On cross-examination, the witness stated among other things, that he did not see the accident—no curve in the road for three hundred yards—mule ran the length of twenty-eight rails, each thirty feet long, and ran off twenty yards from the track and back, where he was hemmed in—a train had passed, and the witness heard two sharp alarm whistles. On re-direct examination the witness stated the relative position of a fence, a ditch, and the railroad culvert. The testimony of the other witnesses for the plaintiff does not materially differ from that of the plaintiff himself.

The defendant introduced the engineer, who testified that on the day mentioned he was running the locomotive of a freight train, and discovered a mule standing on the crossing in plaintiff's field, near a culvert, about half a mile off. He shut off steam, blew on brakes, and rolled down to within a quarter of a mile of the mule, and then sounded "the cattle alarm," when the mule walked off the track. The train then moved on at the rate of about fifteen miles an hour, when the engineer discovered another mule in the field, near the road, on the opposite side from the first mule, which was likewise driven off. The mule that was killed came suddenly and unexpectedly on the track about five steps ahead of the engine, and did not run along ahead of the train. When witness first gave the "cattle alarm," the mule walked off the track into the field, and when it jumped back on the track the train could not have been stopped in time to prevent the accident. He was running at the usual speed, fifteen miles an hour, blew down brakes, and did all in his power to

stop the train. Witness was vigilant, but did not suppose the mule would run back on the track after it had gone off.

The defendant asked the court to give the following instructions to the jury:

1. If the jury believe from the evidence that the mule went off the track, then the engineer was not required to anticipate its sudden return to the track, and was justified in proceeding with the train.

2. If they believe that, after leaving the track, it suddenly came back so near the front of the locomotive as to make it impossible to stop the train in time to avoid striking the mule, the company is not responsible for the injury.

3. If the mule had left the track the engineer had a right to proceed on his journey as upon a clear track.

4. It is not negligence in the railroad company or its agents merely because the engineer did not stop to see whether an animal near the track is coming on the track and may be killed.

5. If plaintiff fails to show negligence on the part of defendant or its agents, the company is not liable.

6. If the mule sprang upon the track only a few feet in front of the moving train, the company is not responsible for the accident, unless the train was being carelessly run.

7. If defendant could not have prevented the killing the mule after it was discovered on the track, then the defendant is not guilty of negligence.

8. A railroad company is not guilty of negligence because it does not stop its trains when persons are on the ground near the track; nor is there any greater deference due to live stock than to human beings.

The court declined to give these instructions, and charged the jury as follows:

This action having been brought within six months after the killing, if nothing further appeared but the fact that the plaintiff's mule was killed by the defendant company on its track, it would be *prima facie* evidence of negligence on the part of de-

fendant, and the plaintiff would be entitled to recover the value of the mule. But there being testimony as to the circumstances attending the killing, the jury must determine, under the instructions of the court, whether the defendant is guilty of any negligence—whether the defendant has rebutted the presumption of negligence. If the engineer saw the mule upon the track a quarter of a mile ahead, or could have seen it by proper watchfulness, running on the track, and could have stopped the train before reaching the point where the mule was killed, then the defendant is guilty of negligence, and the plaintiff is entitled to recover the value of the mule. If the engineer saw the mule that was killed a quarter or half mile ahead, and the mule left the track when the train was a quarter of a mile off, and the engineer had reason to believe that the mule was no longer in danger, and aftewards it ran upon the track in front of the locomotive, then the defendant is not guilty of negligence, unless the engineer could, by using the appliances at his command, have stopped the train after the mule jumped upon the track the second time, so as to prevent the killing.

The defendant excepted to the refusal of the court to give the instructions asked, and to those given; and appealed from the judgment rendered.

*Messrs. Pruden & Bunch* and *W. B. Shaw*, for plaintiff.
*Messrs. Starke & Martin*, for defendant.

MERRIMON, J. Although the court declined to give the instructions as prayed for, we think it gave the substance of so much thereof as the defendant was entitled to. They were numerous, and some of them consisted simply of statements of legal propositions without regard to the facts of the case, or giving them point and applicability, and some of them were not sound as legal propositions.

It is sufficient, if the court give the substance of instructions prayed for to which a party is entitled, without impairing their

force; but when the instruction contains only a legal proposition, it is the duty of the court to apply it to the facts of the case bearing upon the issue submitted to the jury. It is not the province of the court to simply state abstract propositions of law—it must apply the law to the case and the facts therein. Especially is this necessary in giving instructions to juries. Such instruction should bear upon the various material aspects of the facts, and thus guide the jury in passing upon issues submitted to them; and as well, such instructions ought always to be as simple and pointed as practicable. Jurors are not presumed to be learned in the law, and it is their duty to take it from the court and be governed by it.

The evidence, particularly that as to the immediate circumstances relating to the killing of the mule, was conflicting. The case turned largely upon the facts. Two material aspects of them were presented; one contended for by the plaintiff, the other by the defendant. The court properly submitted the issues to the jury, with instructions, first, as to the law applicable, if the facts as contended for by the plaintiff were true, and secondly, as to the law applicable, if the facts contended for by the defendant were true.

The mule was killed by the defendant's "engine running upon its railroad." This the statute makes "*prima facie* evidence of negligence on the part of the company" in killing the mule, the action having been brought within six months next after the cause of action accrued. THE CODE, §2326.

The burden of repelling the presumption of fact thus raised, is upon the defendant, and it could only be rebutted by showing that by the exercise of due diligence, the killing of the mule could not have been avoided. *Pippen* v. *Railroad*, 75 N. C., 54, and the cases there cited.

The evidence, including that of the engineer, went to show that the railroad was straight, passing through an open field for a long distance in the neighborhood where the mule was killed. It was about one o'clock in the day, and the engineer could, by

reasonable diligence, easily have seen the mule on the road one half or three quarters of a mile ahead of the engine; he saw it on the road half a mile ahead and gave the alarm. The evidence is conflicting as to whether or not the speed of the train was slackened; it was moving at about the rate of fifteen miles per hour; the mule ran off, then on the road, and was killed by the engine.

Now, if these facts were true, or substantially true, and nothing else appeared, the presumption of negligence was not repelled. Indeed, there was manifest negligence. It was the plain duty of the engineer to slacken the speed, and if need be, stop the train. In this aspect of the case, the court instructed the jury that, "if the engineer saw the mule upon the track a quarter or half a mile ahead, or could have seen it running on the track, by proper watchfulness, and could have stopped the train before reaching the point where it was killed, then the defendant was guilty of negligence, and the plaintiff was entitled to recover the value of the mule."

There was evidence tending to prove the case as supposed in this charge, and the plaintiff contended that the evidence proved it. The charge in that view was correct, and is fully sustained by repeated decisions of this court. *Clark* v. *Railroad*, 1 Winst., 109; *Jones* v. *Railroad*, 70 N. C., 626; *Pippen* v. *Railroad*, *supra*; *Farmer* v. *Railroad*, 88 N. C., 564.

The defendant contended, however, that when the whistle was blown, the mule ran off the road, and it was not the duty of the engineer to anticipate that the mule would run back on the road, and slacken the speed of the train; that it did suddenly run back, and so short a distance ahead of the engine, that it was impossible to stop the train before the mischief was done.

We cannot accept this proposition as true, without qualification. If the mule ran off the road quietly and manifested by its acts no great alarm, but a disposition to get away from the road, or if at first it stood still, off the road, until the near approach of the train, then it suddenly ran back on the road a

short distance ahead of the engine and was killed, the engineer being unable to stop the train; in such case there would not be negligence, and the defendant would not be liable.

But in another view, if the mule was greatly frightened at the whistle and the train—was panic-stricken—ran about wildly and recklessly in the immediate neighborhood of the road, and would as likely, in its fright, run on, as from it, and the engineer failed to slacken the speed of the train, and the mule suddenly dashed back on the road and was killed by the engine, this would be negligence, and the defendant would be liable for damages.

It may be conceded that where cattle are quietly grazing, resting or moving near the road—not on it—and manifesting no disposition to go on it, the speed of the train need not be checked, but the rule is different, where the cow or mule is on the road and runs on, then off, along, near to, and back upon it.    In such a case, reasonable diligence and care require that the engineer shall slacken the speed, keep the engine steadily and firmly under his control, and if need be, stop it until the danger shall be out of the way.

Every intelligent mind grants the importance and usefulness of railroads as instrumentalities in the advancement of civilization, prosperity and happiness of society; but necessary as they are, essential as it may be to business and travel to have the highest rate of speed consistent with safety, it does not follow that these must be had at the reckless and unnecessary sacrifice of the property of individuals.    The law implies and requires that in all employments and businesses, however useful or necessary, there shall be observed reasonable care and diligence in respect to the rights of individuals and the safety of property.

It seems to us that every just mind must conclude that, in a case like that last above supposed, the defendant, to say nothing of the safety of human life and its own property, has not the right to rush on and destroy the mule, cow, or horse, as the case may be, that happens to stray upon its road in a country where

cattle and other live stock are, and have always been allowed to run at large in the fields and forests.

To meet the aspect of the facts as contended for by the defendant, the court charged the jury that, "if the engineer saw the mule that was killed a quarter or half a mile ahead of the train, and the mule left the track when the train was a quarter of a mile away, and the engineer had reason to believe that the mule was no longer in danger, and afterwards, the mule ran upon the track in front of the engine, then the defendant was not guilty of negligence, unless the engineer could, by using the appliances at his command, have stopped the train after the mule had jumped upon the track the second time, so as to prevent the killing."

The instruction is substantially correct. The court fairly submitted the evidence to the jury in the views of it contended for by the parties respectively. The testimony of the engineer tended strongly to support the view contended for by the defendant. The evidence for the plaintiff tended to show negligence as contended by him. It was for the jury to pass upon the weight of the evidence and find a verdict upon the issues thus fairly submitted to them.

There is no error, and the judgment must be affirmed. Judgment accordingly.

No error.                                                    Affirmed.