ISAAC SNOWDEN et al. v. THE NORFOLK SOUTHERN RAILROAD COMPANY.

*Assignment of Error—Negligence—Injury to Stock by a Railroad.*

1. An exception, "that the verdict is contrary to the law and the evidence," will not be considered, on appeal, as the jury is the sole judge of the effect of the evidence, and the exception, that the verdict is contrary to law, is too vague to be entertained by the Court.

2. Where a horse was feeding within three feet of a railroad track, in plain view of the engineer, who did not slacken the speed of the train, or take other precautions, until the train was within close proximity to the horse, and he had gotten upon the track, *It was held*, negligence.

(*Wilson* v. *The Railroad*, 90 N. C., 69, cited, distinguished, and approved).

CIVIL ACTION, tried before *Gudger, Judge*, and a jury, at March Term, 1886, of CURRITUCK Superior Court.

There was a verdict and judgment for the plaintiffs, and the defendant appealed.

The facts are stated in the opinion.

No counsel for the plaintiffs.
*Mr. L. D. Starke,* for the defendant.

SMITH, C. J.   The object of this suit, is the recovery of the value of the plaintiffs' horse, killed on November 13th, 1884, by the alleged negligent running of a train of cars over the defendant's railroad. The testimony is concurrent to the effect, that the horse was feeding in a ditch, some three feet from the

track, which passed through the pasture of one of the plaintiffs, when, as the train approached, and came within the distance of less than fifty yards from the place, the horse became frightened, ran a few yards along the ditch, and then, springing upon the track, dashed forward until he encountered the cattle-guard, over which he attempted to jump, and fell in the culvert, where he was struck by the locomotive and killed. The engineer testified to first seeing him, quietly grazing, about one hundred and fifty yards in advance, while others said he could have been seen for four hundred yards; that he at once sounded the alarm whistle, gave the signal to put down brakes, and reversed his engine, and thus checked the speed of the train, but could not bring it to a stand-still, until it came in contact with the horse.

This witness, a conductor in the service of the company, but not on this occasion in charge of the train, and the fireman, gave substantially the same account of the occurrence, and say, that whatever was practicable; was done to arrest the motion of the train, which was long and consisted of from 16 to 19 loaded cars, but so great was the *momentum*, that it could not be stopped before reaching the horse. This testimony was not in harmony with that of the plaintiffs' witnesses, one of whom was in his yard at the time, within twenty-five yards of the place of the accident, and saw what occurred, who says the train was running at its usual speed, and there was no halt in its onward progress; that he heard the alarm whistle when the cars were within 300 or 400 yards of the horse, and they continued on. Other witnesses gave evidence of similar import.

The train did stop, after striking the horse, a short distance beyond the place of the collision. We reproduce the substance and general character of the conflicting evidence, in order to a proper understanding of the exception, upon which the case comes before us, upon the defendant's appeal.

The defendant requested, and the Court gave, an instruction in these words:

"If the owner permitted his horse to stray off and get on the track of defendant's railroad, and it got killed or hurt, the company is not liable, unless the agents were carelessly running the train, or could, by the exercise of proper care, after the horse was discovered, have avoided or prevented the injury. Proper care means reasonable care."

The following instruction was asked, and refused:

"It was not incumbent upon the servants of the defendant, to stop its train or slacken its speed, because of a horse browsing in a ditch in the field on the side of the railroad, and that, if the company and its servants were not carelessly or negligently running the train, when the horse was *discovered on the track*, the company is not liable in this action, unless it could, by the exercise of reasonable care, after the horse was discovered on the track, have avoided or prevented the injury."

Instead, and as a substitute, the jury were charged:

"That, if the horse was discovered grazing, or could by reasonable care, have been discovered, in the ditch along the railroad track, it was the duty of defendant's servants to adopt such precautionary measures as would enable them to avoid injuring the horse, in case he should jump suddenly upon the track."

The errors assigned in the record, consist:

1st. In the refusal to give the second instruction.

2d. In giving that in substitution, and

3d. For that, the verdict was contrary to the law, and to the evidence.

The last exception we cannot consider, for the weight and effect to be given to the evidence belongs exclusively to the jury, and an averment that the verdict is "contrary to law," specifies no distinct error, and is in terms, entirely too vague and indefinite.

The refused instruction pretermits all reference to responsibility for the management of the train, and the duties imposed on those having it in charge, until the horse was actually upon the track, when, it is quite manifest, the proximity and speed of

the train rendered the impact unavoidable; while the substituted direction covers also the antecedent time, when the animal was, or by the use of reasonable vigilance and care, could have been seen, involving the duty of keeping a proper lookout, and so delaying the train, as would admit of an avoidance of the injury, should he become alarmed and frightened, as the train came near, and jump, as in fact he did, upon the road, just in front of it, and but a short distance from it. We think the modification was eminently suitable, and that a proper vigilance was called for, to see what effect would be produced by the rapid approach of the train towards the place, and in a direction to pass but a few feet from him. A wild alarm might be reasonably expected under the circumstances, and it was quite as probable, that in the effort to escape impending danger, he would run upon, as fly from, the track. The "precautionary measures," mentioned in the charge, and looking to the possible consequences of the action of the horse, before an inrushing train, nervous and wild with fright, ought to have been taken, and it was proper for the obligation, thus imposed upon the officers in control, to have been brought to the attention of the jury.

Had the speed been sufficiently slackened, as it was *not, according to the evidence of the plaintiffs' witnesses,* while those of the defendant say it was, (and this fact was for the jury to determine,) the catastrophe could perhaps have been avoided ; and at least it was negligence to disregard the indications of danger and make no effort to guard against it.

The action having been brought within six months, the *prima facie* case of negligence made by the statute (The Code, §2326), devolved upon the company the duty of showing that all proper care was used, and no neglect could be imputed to the company or its agents; and not only do the facts in proof, if the plaintiffs' testimony is accepted, fail to repel the *prima facie* evidence, but they show a want of care and vigilance such as the law demands.

The case of *Wilson* v. *Railroad*, 90 N. C., 69, cited for the defence, does not in any degree militate against the view taken of the case.

In the opinion delivered by MERRIMON, J., this general rule, governing the conduct of those in charge of running railway trains, is stated :

"It may be conceded, that when cattle are quietly grazing, resting or moving near the road, not on it, and manifesting no disposition to go on it, the speed of the train need not be checked ; but the rule is different when the cow or mule is on the road, and runs on, then off, along, near to, and back upon it. In such case, reasonable diligence and care require that the engineer shall slacken the speed, keep the engine steadily and firmly under his control, and, if need be, to stop it, until the danger shall be out of the way."

All the reasoning applied to a frightened animal, running wildly on and off the track, in its reckless effort to escape, and which dictates a diminution of speed, is quite as applicable to the case of a nervous animal, such as a horse, which, when alarmed, seems often to be utterly heedless of consequences, or of the path of safety, in its mad efforts to escape. It was reasonably certain that the horse would be frightened, when he saw what was rapidly, in appearance, coming upon him, and would not remain quiet when it passed within some three feet of him. He would be quite as apt, as he did in fact, after rushing a short distance along the ditch, to leap upon the road as upon the opposite bank. This possible, if not probable, action, would suggest itself to any careful and considerate person, and the necessity of being on the lookout, and taking proper precautions, such as slowing the locomotive, to guard against mishap and danger. It is true, the officers of the company testify that this was done, but witnesses for the plaintiff testify differently, and the fact, upon the opposing evidence, has been found by the jury.

There was no error in the instruction complained of in this aspect of the case, and upon the assumption that no attention

was to be given to the moving of the engine until the animal was on the track.

The judgment must be affirmed.

No error. Affirmed.