Plaintiff claimed damages for the killing of his mare by negligence of defendant in running its cars and engine.
It was not controverted on the evidence that the plaintiff's mare was knocked off a railroad embankment in the daytime by the defendant's passenger train and killed. The plaintiff's evidence tended to show that the mare, by proper lookout, could have been seen by the engineer a distance of a mile and a half, the railroad being very straight at that point, and running through a level country. One of plaintiff's witnesses testified that he saw the mare on the embankment, on the walk by the side of the track, when the train was half a mile off; that the embankment was one hundred and fifty yards long, ten feet high, and very steep, and that the whistle did not blow till the engine was within fifty yards of the mare; that she jumped and was almost immediately struck by the train, and that no effort was made to stop the train (366) or slacken its speed.
The testimony of the defendant went to show that the mare came up the embankment twenty yards ahead of the engine, and too late to stop the train, which could not have been stopped, at the rate it was going, under three hundred and fifty yards.
There were no exceptions to the evidence.
The instructions asked by the defendant were given by the court except the following:
1. It is not required of an engineer, in running trains, to stop his train when persons are on the ground near the track, nor is there greater deference due to livestock than to human beings.
2. If the defendant used every effort to stop the train and avoid the accident after the mare was discovered then there was no negligence, and the plaintiff cannot recover.
3. If an engineer in charge of a locomotive drawing a train discovers cattle, either upon the track or approaching the same as if they were coming upon the track, blows his whistle, reverses his engine and does all in his power to stop, and fails to do so, he is not negligent, and the plaintiff cannot recover. *Page 270 
The court, in lieu thereof, instructed the jury:
"It was the duty of the defendant to keep a lookout for stock on the track in daylight, and when discovered to use all the means it could, consistent with the safety of the passengers and the operators on the train, to avoid injuring or killing them; that the main questions for the jury in this case were:
"1. Was the horse on the track of the defendant company sufficiently long, after she could, by the exercise of an ordinarily diligent outlook, be seen by defendant, or its employees running the train, to have (367) been discovered, for the train to have had its speed slackened or, if necessary to prevent the killing, stopped?
"2. Were all the means that could, with safety to the passengers and operators, have been used, used by the defendant after the horse could by an ordinarily diligent outlook have been discovered, to prevent the killing?
"3. The question as to the time the horse was discovered on the track by the engineer or other employees of the defendant company is not when it was actually seen, but when, by the exercise of ordinary care and diligence in looking out, it could have been seen, and this is a question of fact for the jury to find from the evidence, and the burden is upon the plaintiff to show to their satisfaction, by a preponderance of the testimony, that the outlook was not such as it should have been under the instructions above given, and that in consequence of the negligence of the defendant, the horse was killed.
"4. If by an ordinarily careful outlook the horse could have been discovered in time to have allowed the train to be stopped before killing the horse, and it was not so stopped, it would be negligence, and the plaintiff would be entitled to a verdict on the first issue, and your verdict should be `Yes,' provided you find, from the evidence, that the horse was on the top of the embankment.
"5. If the jury find from the evidence that the horse came up on the track or embankment of the defendant company too near the engine and cars for the engineer, by the use of the appliances under his control, and which he could use with safety to the passengers and employees, to stop the train before striking the horse, they will answer the first issue `No.'"
There was a verdict for plaintiff, and from judgment thereon the defendant appealed.
The defendant assigned error in refusing to give the instructions (368) requested, and in those given.
The first prayer for instruction asked and refused is based upon the idea that livestock on the approach of the locomotive will show the same judgment and discretion as human beings under the same circumstances. "It was reasonably certain that the horse would be frightened," said the lateChief Justice, in Snowden v. R. R., 95 N.C. 93, "when he saw what was rapidly, in appearance, coming upon him, and would not remain quiet when it passed in three feet of him. He would be quite as apt, as he did in fact, after rushing a short distance along the ditch, to leap upon the road as upon the opposite bank. This possible, if not probable action, would suggest itself to any careful and considerate person, and the necessity of being on the lookout and taking proper precautions, such as slowing the locomotive, to guard against mishap and danger." But appellant's proposition is too unreasonable to need citation or discussion. The charge as given, in lieu of the first prayer, is correct.
The second prayer for instruction was substantially given, with the proper modification that the test was not whether proper effort was used "after the mare was discovered," but "after, by the exercise of a proper outlook, she could have been discovered." Wilson v. R. R., 90 N.C. 69.
The third prayer was substantially given. The defendant has no ground to complain because the exact language of his prayer is not given, if it is in substance given. S. v. McNeill, 92 N.C. 812; Conwell v.Mann, 100 N.C. 234. Indeed, the charge as given is open to the exception that it is too favorable for the defendant, in that the jury were instructed that the burden was on the plaintiff to show that the horse was killed in consequence of the negligence of the defendant. (369) The action having been brought within six months after the cause of action accrued, the statute raised a presumption of negligence on the part of the defendant, and the burden is on it to rebut such presumption. Code, sec. 2326; Pippen v. R. R., 75 N.C. 54; Wilson v.R. R., 90 N.C. 69.
There is no error in the refusal of instructions, nor is there any in the charge, of which the defendant can complain. It is proper, however, to say that a general exception to a "charge as given," without specifying error, will not be considered in this Court. This has been repeatedly held by this Court in numerous decisions, and has been reaffirmed in Dugger v.McKesson, 100 N.C. 1; Hammond v. Schiff, 100 N.C. 161; McKinnon v.Morrison, ante, 354.
Affirmed.
Cited: Randall v. R. R., post, 415; Lindsey v. Sanderlin, ante, 331;Bullock v. R. R., 105 N.C. 189; Deans v. R. R., 107 N.C. 690, 692; *Page 272 Randall v. R. R., ib., 755; Meredith v. R. R., 108 N.C. 618; Hinkle v. R.R., 109 N.C. 479; Ward v. R. R., ib., 360, 366; Clark v. R. R., ib., 452;Pickett v. R. R., 117 N.C. 630; Doster v. R. R., ib., 662; Styles v. R.R., 118 N.C. 1089; McArver v. R. R., 129 N.C. 384; Snipes v. Mfg. Co.,152 N.C. 46.