MOORE v. ELECTRIC CO.

(Filed November 22, 1904).

1. STREET RAILROADS—*Animals—Negligence—The Code, sec. 2326.*

   The killing of a dog by a street railway is not prima facie evidence of negligence.

2. ANIMALS—*Damages.*

   An action may be brought for an injury to a dog.

3. STREET RAILROADS—*Damages.*

   In an action against a street railway for killing a dog, the motorman is warranted in acting on the belief that the dog on the track apparently in the possession of his faculties will avoid danger.

4. STREET RAILROADS—*Damages.*

   A street railway company, when its cars are properly equipped, is not liable in damages for the killing of a dog by one of the cars, unless the killing was done under such circumstances as to justify the conclusion that it was either willful, wanton, or reckless.

5. STREET RAILROADS—*Damages—Evidence.*

   In an action for the killing of a dog by a street car, it is not competent to show the condition of the fenders on particular cars other than the one by which the dog was killed, it being shown that the fenders were different on different cars.

ACTION by W. J. Moore against the Charlotte Electric Railway, Light and Power Company, heard by *Judge Thomas A. McNeill* and a jury, at March Term, 1904, of

the Superior Court of MECKLENBURG County.    From a judgment for the plaintiff the defendant appealed.

*T. G. McMichael,* for the plaintiff.
*Burwell & Cansler,* for the defendant.

MONTGOMERY, J.    This action was commenced in a court of a justice of the peace for the recovery of fifty dollars for the killing of the plaintiff's dog by the alleged negligent operation by the defendant of one of its street cars.    There were no written pleadings in the case, but upon a reading of the evidence it would appear that the plaintiff on a trial in the Superior Court relied upon four alleged acts of negligence: First, excessive speed of the car; second, permitting high weeds to grow upon the sides and near the track; third, the failure to stop the car in time to avoid the collision, and fourth, failure to equip the car with a proper fender.

We have no case in our Reports where the injury to or the killing of a dog by a railroad or street car company is made the subject of a civil action for the recovery of damages by its owner.    Our statute, sec. 2326 of the Code, makes it prima facie evidence of negligence on the part of a railroad company, in an action for damages against the company, whenever it appears that any cattle or other live stock shall be killed by the engines or cars running upon the railroad. The statute does not give the right, in case of injury or killing of cattle or other live stock, to the owner thereof to bring an action for his loss of property.    That right the owner had before.    The statute made the killing prima facie evidence of negligence.    The dog is not included of course in the category of cattle or live stock, but is a species or subject of property recognized as such by the law, and for an injury to which an action at law may be sustained.    *State v. Latham,* 35 N. C., 33.    There would be no presumption

of negligence, however, by the mere fact of killing or injury being shown. In numerous cases this Court has laid down the law concerning the duties of engineers in charge of moving railroad locomotives in regard to cattle and live stock on and in near proximity to the railroad track and in front of the moving cars. In *Wilson v. Railroad,* 90 N. C., 69, the Court said: "If the mule ran off the road quietly and manifested by its acts no great alarm, but a disposition to get away from the road, or if at first it stood still, off the road, until the near approach of the train, then it suddenly ran back on the road a short distance ahead of the engine and was killed, the engineer being unable to stop the train, in such case there would not be negligence and the defendant would not be liable. But in another view, if the mule was greatly frightened at the whistle and the train, was panic-stricken, ran about wildly and recklessly in the immediate neighborhood of the road, and would as likely in its fright run on as from it, and the engineer failed to slacken the speed of the train, and the mule suddenly dashed back on the road and was killed by the engine, this would be negligence and the defendant would be liable for damages. It may be conceded that where cattle are quietly grazing, resting or moving near the road—not on it, and manifesting no disposition to go on it—the speed of the train need not be checked; but the rule is different where the cow or mule is near the road and runs on, then off, along, near to, and back upon it. In such a case, reasonable diligence and care require that the engineer shall slacken the speed, keep the engine steadily and firmly under his control, and, if need be, stop it until the danger shall be out of the way."

That case is cited and approved by this Court in *Snowden v. Railroad,* 95 N. C., 93, and *Ward v. Railroad,* 109 N. C., 358.

And in *Doster v. Street Railroad,* 117 N. C., 651, 34

L. R. A. 481, the Court said: "Where a horse is being driven' or is running uncontrolled along a highway parallel to a railway of any kind, though it give unmistakable evidence by its movements that it is alarmed at an approaching train or car, the engineer or motorman in charge is not negligent in failing to diminish the speed unless the animal is actually on the track in his front, or he has reasonable ground to believe that in its excited state it is about to go or may go upon it so as to cause a collision."

We think that the dog is not entitled to the same consideration at the hands of an engineer in charge of a moving locomotive that cattle or live stock are, and that the engineer is not, therefore, compelled to keep either as vigilant lookout for dogs or as great care in the management of his engine or train so as to prevent their injury as he is for cattle or live stock. However, the dog in the case before us suddenly appeared on or near the track and manifested no fear or excitement. It is not hazarding too much to say that it is a matter of common knowledge that in the classification of animal life (not including man) the dog occupies a position in point of intelligence, fidelity and affection superior probably to all of the others. He is known to have been for ages not only an animal of prey but wonderfully acquainted with the habits and ways of both man and beast and birds, keenly sensitive as to sight, hearing and smell, and remarkably agile in all of his movements. He can, by training and association with man, become adept in many useful employments and can be taught to do almost anything except to speak. They are known ordinarily to be able to take care of themselves amidst the dangers incident to their surroundings. Where a horse or a cow or a hog or any of the lower animals would be killed or injured by dangerous agencies the dog would extricate himself with safety.

In a line with the foregoing observations is one in the opin-

ion in the case of *Jones v. Bond,* 40 Fed. Rep., 281, where the Court, in denying the right of recovery for the negligent killing of a dog, said: "I presume the reason that other cases of like kind have not been before the courts is that the dog is very sagacious and watchful against hazards, and possesses greater ability to divert injury than almost any other animal; in other words, takes better care of himself against impending dangers than any other. He can mount an embankment or escape from dangerous places where a horse or cow would be altogether helpless; hence, the same care to avoid injuries to an intelligent dog on a railroad is not required of those operating the trains that is required in regard to other animals. The presumption is that such dog has the instinct and ability to get out of the way of danger, and will do so unless its freedom of action is interfered with by other circumstances at the time and place."

We think, therefore, that the dog, on account of his superior intelligence and possession of the other traits which we have mentioned in respect to the diligence and care which locomotive engineers owe to their owners and to them, must be placed on the same footing with that of a man walking upon or near a railroad track apparently in possession of all his faculties, and that the engineer would be warranted in acting upon the belief that the dog would be aware of the approaching danger and would get out of the way in time to avoid the injury. As the engineer would be negligent if he ran over and injured or killed a man on the track who was apparently helpless, so he would be if he killed or injured a dog near or upon the track in a position which showed that he was helpless or totally oblivious of his surroundings.

In *Rapid Transit Co. v. Dew,* 100 Tenn., 317, 40 L. R. A., 518, 66 Am. St. Rep., 755, the Court allowed a recovery because it appeared that the dog which was killed was standing upon the track of the street railway, engaged in pointing

some birds, which fact the motorman saw for a considerable distance before the car ran over the dog. Besides, we know of common knowledge that within this jurisdiction, at least, there is scarcely a household without a dog or dogs; that they are found in every street and public place, no limitation being put upon their free movements, and by the hundreds they daily pass in our cities and towns over the street railway track, where and as often as they please. If, therefore, it should be required that motormen in charge of these cars should exercise the same degree of care to avoid running over a dog that the law requires them to avoid injury to other animals, the public convenience of rapid transit in populous communities would be seriously impaired and all business interests made to suffer. As the defendant's counsel say in their brief, "the dog would be absolute master of the situation and would force the electric cars out of business."

The true rule, we are satisfied, should be that street railway companies, when their cars are properly equipped, should not be held liable in damages for the killing of a dog by one of the street cars in motion, unless it was done under such circumstances as to justify the conclusion that the killing was done either willfully, wantonly or recklessly.

The undisputed evidence in this case renders it unnecessary to discuss, according to the view of the law which we have announced, either of the alleged acts of negligence except the last one, to-wit, the failure to properly equip the cars with fenders. The plaintiff, in his examination in chief, had testified as to the killing of his dog and its value. He was afterwards recalled, and then testified, over the defendant's objection, that he had measured one of the fenders on one of the cars and found that it was twenty-five inches from the track on one side and twenty-three inches from the track on the other side; and further, that he saw several

fenders that were about the same height from the track, and that there were three or four different kinds of fenders on the cars, and that the defendant used on the big cars a very different fender from that used on the little cars, and that it was a little car, that ran over his dog. That evidence ought not to have been received. It was offered, of course, to prove that the fender upon the car that killed the dog was either improperly constructed or had been permitted to become defective, and the jury might draw the inference that if the fender had been of standard make or in good condition the dog would not have been killed. But it was not competent to show that the fender on the car which killed the dog was defective by evidence to the effect that a fender on one of many cars was defective or out of repair. The evidence would be too highly conjectural. Especially is this so in this case, as it appears from all the evidence that the plaintiff would have had no difficulty in identifying the car which killed the dog. The statement of the plaintiff, too, that there were several different kinds of fenders on the different cars, and that those on the big cars were very different from those on the little cars, and that one of the latter killed the dog, did not amount to evidence of any kind pertinent to the case. It did not tend to show which were the superior fenders or which were defective fenders, those on the big cars or those on the little cars. The evidence was misleading. And, besides, the very fact, if it existed, that the defendant had three or four different kinds of fenders would make it quite clear that evidence of one kind of fender on one of the cars should not be used to show how another car was equipped as to the fenders. The motorman testified that the fender on the car which killed the dog was in good condition and would do its work well, and there was no evidence to the contrary.

The motion of the defendant to nonsuit the plaintiff because there was no evidence tending to show negligence on the part of the defendant ought to have been allowed.

Error.

DOUGLAS, J., concurs in result.