J. W. PATTERSON v. CHARLOTTE ELECTRIC RAILWAY, LIGHT
AND POWER COMPANY.

(Filed 20 November, 1912.)

Street Railways — Pedestrians—Crossing Track—Negligence—Evidence—Presumptions—Nonsuit.

One who attempts to cross the track of an electric railway, from a place of safety, in front of a car rapidly approaching at night, with signal lights and giving the customary warnings of its approach, and does so in spite of the warnings of a companion, causing a collision and its consequent injury to him, under circumstances which rendered all reasonable efforts of the motorman unavailing to stop the car from the time the danger was apparent to that of the impact, sustains the damages through his own recklessness, which the motorman could not reasonably have anticipated, and not by reason of the defendant's negligence; and a judgment of nonsuit upon the evidence should be entered.

APPEAL by plaintiff from *Cline, J.,* at May (Special) Term, 1912, of MECKLENBURG.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*J. D. McCall for plaintiff.*

*Z. V. Taylor, Osborne & Cocke, and H. C. Miller for defendant.*

WALKER, J. Plaintiff's intestate was killed on West Trade Street in the city of Charlotte, as he was crossing the track of defendant's street railway, on 9 July, 1911. The court, after hearing the evidence of plaintiff, dismissed the action under the statute, because there was no evidence to show that negligence

160—37

on the part of defendant caused the death of intestate. Plaintiff appealed. After a careful examination of the testimony, considered as true and construed in the most favorable light for the plaintiff, and, further, giving him the full benefit of all reasonable inferences therefrom, we are constrained to hold that the ruling of the court was right. Intestate and B. L. Manus were walking from Seversville, a suburban village, towards the city, and intestate crossed the track from right to left, in front of the car, which he could easily have seen and heard. He evidently knew it was approaching, as it was only 150 or 200 yards away, with lights burning. Besides, when he was standing on the left side of the track, a place of perfect safety, he was warned by his companion "that the car was coming," and the motorman, who kept a constant and careful lookout ahead, sounded his gong and applied his brakes, as he was descending a grade in the street, and notified intestate and Manus of the car's approach. It further appears that, suddenly and within a time too brief for the motorman to stop his car, intestate attempted to recross the track in front of the moving car, and so near thereto as to prevent the car from being stopped in time to save him. The car was rolling down grade without any power and by its own acquired momentum. As soon as the motorman discovered the danger to which intestate was exposed by his own negligence and recklessness, he reversed his lever, which reverses the current and the direction of the power and of the car, driving it backwards. He acted so promptly and applied the increased force of the current in the opposite direction so quickly that at the very moment he struck the deceased the "circuit-breaker" or switch overhead, placed there as a "safety valve" or appliance to prevent injury to passengers and the burning of the car by an excess of current, was disconnected, affecting even the current at the power house. Under the great strain, it held up to the very time the deceased was stricken. All the evidence shows that the motorman was competent; that he kept a proper lookout, even a vigilant one, and that he gave timely notice of the car's approach, and that when suddenly confronted by the emergency, he acted promptly and with due care in his effort to stop the car.

The efficient cause of the death was the negligence of the intestate himself. He could see the car as it was moving towards him, as it was plainly visible, and could also hear it; he was warned by B. L. Manus of its approach, and also by the motorman, who rang his gong; but notwithstanding all this premonition, he carelessly, heedlessly, and even recklessly attempted to cross the track in front of a rapidly moving car, about 25 or 30 yards from him and descending a grade in the street. The motorman certainly could not anticipate that a man, in a place of safety near the track, would so suddenly and in spite of all warning, cross the track in front of his car, when it was too late to save him. The authorities are practically all one way on this question. A few cases will indicate the uniform trend of the decisions:

1. "If plaintiff did not observe the poles and trolley wires immediately in front of him, it was plaintiff's fault. All of the evidence as well as the photograph exhibits show that they (the tracks, poles, and trolley wires) were visible some distance ahead of him. It is manifest that the collision was brought about by the unwarranted attempt upon the part of plaintiff to rush across the track ahead of the approaching car. The evidence is not sufficient to show that the motorman by ordinary prudence, under the circumstances, could have either foreseen or prevented the consequences of plaintiff's recklessness. His injury was brought about by his own fault, and the consequence of his recklessness should be borne by him, and not by the defendant." *Lindley v. Manufacturing Co.,* 153 N. C., 394.

2. "Had he used his senses, he could not have failed both to hear and to see the train which was coming. If he omitted to use them, and walked thoughtlessly upon the track, he was guilty of culpable negligence, and so far contributed to his injuries as to deprive him of any right to complain of others. If, using them, he saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of his mistake and temerity cannot be cast upon the defendant. No railroad company can be held for a failure of experiments of that kind." *R. R. v. Houston,* 95 U. S., 697; *Schofield v. Railway Co.,* 114 U. S., 615; *Railway Co. v. Freeman,* 174 U. S., 379.

3. "The court was therefore right in charging the jury that the doctrine of 'sudden peril' has no application to this case, and that the motorman was not bound to anticipate that the plaintiff, whether frightened or not, would leave a place of safety, or, having left it, would go into a place of danger, when she might just as well have gone in another direction; and further, the motorman was not bound to presume that the plaintiff, whether frightened or not, would run into the car, when she could easily see and hear it. He had the right to presume even to the last moment, when it was too late to save her, that she would not do so reckless an act." *Crenshaw v. S. Railway Co.,* 144 N. C., 314; *Doster v. S. Railway Co.,* 117 N. C., 651; *Moore v. Railway Co.,* 136 N. C., 554.

4. "It is to be presumed that a rational being will not needlessly venture into places of peril, and if he does, that he will use proper precautions to guard against injury. If he fails to do either, and suffers damage in consequence, it must be regarded as caused by his own rash act and inattention to his own security." *Parker v. R. R.,* 86 N. C., 222. Authorities in harmony with those cited are: *High v. R. R.,* 112 N. C., 385; *Neal v. R. R.,* 126 N. C., 634; *Markham v. R. R.,* 119 N. C., 715; *Pharr v. R. R.,* 133 N. C., 610; *Bessent v. R. R.,* 132 N. C., 934; *Matthews v. R. R.,* 117 N. C., 640; *Syme v. R. R.,* 113 N. C., 565; *Norwood v. R. R.,* 111 N. C., 236; *Meredith v. R. R.,* 108 N. C., 616. There are numerous cases decided in other jurisdictions which sustain our view and hold that, if a person attempts to cross a street railway track in front of a rapidly moving car, which he sees, or after being warned of its approach, and by miscalculating his chances is injured, without fault of the men in charge of the car, his negligence is the proximate cause of his injury, and bars his recovery. *Craemer v. S. Railway Co.,* 156 Mass., 320 (31 N. E., 391); *Itskowitz v. Railway Co.,* 71 N. E., 298; *Riedel v. Traction Co.,* 61 S. E. (W. Va.), 821; *Everett v. Railway Co.,* 6 Am. Elec. Cases (Cal.), 460; *Carson v. Street Railroad Co.,* 147 Pa. St., 219; *Watson v. Mound City Street Railway Co.,* 6 Am. Elec. Cases, 500, and many other cases which will be found in defendant's brief, and to which reference can be easily had for any additional light upon the subject.

This case is much more favorable in its facts for the defendant than were several of those we have cited. In the case at bar, we can find no evidence of the failure to notify the intestate of the car's approach; on the contrary, he was fully warned by the sound of the gong and the noise incident to the motion of the car, which he could readily have heard, and also by the brightly shining lights, which he could easily have seen, and by the cry of his friend. It is marvelous that he essayed to cross the track under such circumstances, when nearly every sane man would have known that he was taking all possible risks, and that his life would be immediately imperiled. The fault was all his own, as the motorman (plaintiff's witness) acted with due care, and stated that "he did not believe that any power in the world would have stopped the car before it struck him." In this connection we quote what was said in *Watson v. Mound City Street Railway Co., supra:* "That deceased saw the moving train before going upon the track is demonstrated not only by the fact that it was close to him, and he 'had eyes to see,' but by the positive evidence that 'he hurried to go round the cars.' There is no evidence that the motorman in charge of the cars could have known that deceased intended venturing across the track until he got upon it. Deceased was not, then, in a situation of peril which called for action by the motorman, until he went upon the track. When he stepped upon the track he knew, or should have known, that the cars would run upon him unless he was very quick in his movements, or unless their speed was checked. In the circumstances, no fair and just conclusion can be drawn but that the negligence of deceased was a direct, contemporaneous, and proximate cause of his own death. In the face of known and imminent danger, he took the risk of crossing the track, and he must bear the consequences of his contributory negligence."

We sustain the nonsuit, as the court properly held that the death of the intestate could not be referred to any wrong of the defendant, but only to his own fault and reckless conduct.

Affirmed.