BETTIE K. ENLOE, ADMX., v. SOUTHERN RAILWAY CO. ET AL.

(Filed 20 December, 1919.)

1. **Railroads—Employer and Employee—Negligence—Personal Injury— Derailment—Evidence—Nonsuit—Trials.**

   The court will take judicial notice that a bull is an animal of a phleg-matic character not likely to be frightened or hastened in its movements by the ordinary signals of warning given by an approaching train; and where it is shown that the intestate of plaintiff, a fireman on the second engine of a double-header train, was thrown between the cab of the engine and the tender of his train by a derailment caused by running over a bull, the train moving about fifteen miles an hour, on a straight track about 300 or 400 yards from a curve in a cut the train had cleared; that a cow had just crossed the track, and the bull, quietly grazing 15 or 20 steps from the track, started to cross, running, when the train was 35 or 40 feet of the point of impact: *Held*, the mere fact that the whistle was not then blown, under the circumstances, in so short a time, is not suffi-cient evidence of negligence to be submitted to the jury, and a motion as of nonsuit was properly allowed.

2. **Negligence—Res Ipsa Loquitur—Presumptions—Admitted Facts— Railroads—Derailments.**

   The doctrine of *res ipsa loquitur* from a derailment of a train, in a stock injury case, is inapplicable when it is not denied or controverted that the track and equipment, etc., were in good condition, and all the facts causing the accident are known.

CLARK, C. J., dissenting; HOKE, J., concurring in the dissenting opinion.

APPEAL by plaintiff from *Ray, J.,* at the June Term, 1919, of BUN-COMBE.

This is an action to recover damages for negligence resulting in the death of Lloyd Enloe, a fireman who was killed while at his post of duty and employed by the Southern Railway Company.

Plaintiff's intestate was killed about 12 o'clock m., on 9 May, 1917, at a point on the line of the Southern Railway Company about 300 yards west of Lake Junaluska Station in Haywood County. The deceased was twenty-one years of age, and the sole support of his mother and five small brothers and sisters. At the time of his death he was the fireman on the second engine in a double-header train going east from Waynes-ville, N. C., toward Asheville, N. C. The train was in charge of Captain L. E. Perry as conductor. The front engine was being run by Clint Burt, engineer, and O. H. Bradshaw, fireman. The second engine was in control of A. C. Enloe, engineer, and Lloyd Enloe, deceased, as fire-man. The death was caused by a derailment of the engine, which occurred upon a straight track, about 300 or 400 yards east of where the train cleared a little cut, called the "White Cut," which was caused by the train running over a large bull, the property of Garrett Reeves.

The bull and a cow were grazing on the north side of the track, and when first discovered by O. H. Bradshaw, fireman on the front engine, the cow was wandering in the direction of the track. The fireman saw the cow and the bull shortly after the train cleared the cut. The cow went toward the track and passed across the track ahead of the train. The fireman went over from the left to the right-hand side of the cab to see if the cow had passed over in safety, and when he went back to the left-hand side he saw the bull look up and go straight toward the track, and there met the train, causing the wreck. The collision of the train with the bull derailed the engine. The deceased was caught between the cab in which he was riding and the tender containing the coal and water, and was burned by steam escaping from the boiler.

The bull was 15 or 20 steps from the track grazing when he started across, running, and the train was then within 35 or 40 feet of the point of impact running 15 miles an hour.

The evidence of the plaintiff is that the roadbed was in good condition, and that from the time the bull started across there was no time to give a signal or to do anything else to avert the injury. There was evidence that no whistle was blown. At the conclusion of the evidence judgment of nonsuit was entered, and the plaintiff excepted and appealed.

*Wells & Swain for appellant.*
*Martin, Rollins & Wright for appellee.*

ALLEN, J. The evidence for the plaintiff shows that the bull, which was the cause of the accident, was fifteen or twenty steps from the railroad track, grazing quietly, until the train was within 35 or 40 feet of the point of impact, and that he then started across the track, and was run over and killed, causing a derailment of the engine, which brought about the death of the plaintiff's intestate.

It is also in evidence that the train was running fifteen miles an hour, and that not more than one or two seconds elapsed after the bull started to the track, and that within this time the train could not have been stopped, nor could anything else have been done to avert plaintiff's injury and death.

If so, the liability of the defendant, if any, depends on what occurred before this time, and there is evidence that the bull could have been seen when the train was 300 or 400 yards distant, and that the whistle was not blown, and it is upon this last circumstance the plaintiff relies for a recovery.

A review of the cases in which damages have been recovered for killing animals because of failure to sound a whistle will demonstrate that the animals were either on the track, or indicating by their action they

would probably go on, or so close that from the excitable nature of the animal they might be expected to do so, and it is not made the absolute duty of the railroad company to sound the whistle in all cases, when the animals are near the track.

In the *Snowden case,* 95 N. C., 97, the horse was three feet from the track, and it was held that precautions ought to have been taken to avoid the injury, taking into consideration that it was a nervous animal, and the Court quotes with approval the following from *Wilson v. R. R.,* 90 N. C., 69: "It may be conceded that when cattle are quietly grazing, resting, or moving near the road, not on it, and manifesting no disposition to go on it, the speed of the train need not be checked; but the rule is different when the cow or mule is on the road, and runs on, then off, along, near to, and back upon it. In such case reasonable diligence and care require that the engineer shall slacken the speed, keep the engine steadily and firmly under his control, and, if need be, to stop it, until the danger shall be out of the way."

The *dog case,* 136 N. C., 554, and the *turkey case,* 163 N. C., 34, are also illustrations of the principle that the known character of animals may be considered in determining what precautions should be taken to avoid injury, but the latest and one directly applicable is the *goose case,* 166 N. C., 572.

In that case the action was to recover damages for killing geese, and in sustaining a motion for judgment of nonsuit, the Court said: "The mere fact that the whistle was not sounded nor the bell rung, if such was the fact, is not sufficient evidence, taken alone, to have gone to the jury in this case.

"The plaintiff relies upon the 'turkey case,' *Lloyd v. R. R.,* 163 N. C., 33. But the two cases are very dissimilar. . . . The turkey is a nervous fowl, and the jury might well have found that if the whistle had been blown the turkeys would have taken wing or have run, and therefore we held that it was error to enter a nonsuit.

"Geese, however, are phlegmatic and slow of movement, and the blowing of the whistle or ringing the bell would not be calculated to make them run or fly. On the contrary, the approach of the train would be more likely to cause them to huddle up in conference or to stretch out their necks to oppose the passage of the engine. In the absence of evidence showing circumstances of actual negligence, the mere fact that the whistle was not blown or the bell rung did not authorize the court to submit the case to the jury. . . . For all that appears, the geese waddled on the track just ahead of the engine. But if it were shown that they were on the track when the engine was 300 yards off, yet from the nature of the fowl is there any reason to assume that if the signal had been given they would have gotten off the track in time? They

have too much dignity or are too combative to flee promptly from danger. Besides, as Mr. Cooper well observed in his argument, 'Can the engineer determine what are the negotiations of a flock of geese in a field, or even on the track, when they got their heads together?'

"The difference between the characteristics of a turkey and of a goose is a matter of common knowledge. The turkey is long-legged, quick of movement, and promptly responsive to a signal of danger. The goose is short-legged, slow to fly or run, and resentful rather than appreciative of a warning of danger."

The goose is "phlegmatic," which Webster defines as "not easily excited to action," and so characteristic of the bull is the refusal to yield to warning, persuasion, or force that the word "bull-headed" is accepted in ordinary conversation and by lexicographers as the synonym of "head-strong," "obstinate," "stupidly stubborn."

The sounding of the whistle would in all probability have been regarded as the challenge for battle, and certainly there is nothing in the record permitting the inference that it would have deterred the bull from going on the track.

The doctrine of *res ipsa loquitur* usually arising from the derailment of a train does not apply, because the track was in good condition, and all the facts causing the accident are known. 29 Cyc., 592; *Orr v. Rumbough,* 172 N. C., 760.

The intestate of the plaintiff has been the unfortunate victim of a most regrettable accident, for which, however, the defendant is not responsible.

Affirmed.


CLARK, C. J., dissenting: The plaintiff's intestate was killed while on duty as a fireman on the second engine of a double-header train. He was 21 years of age, and the sole support of his mother and five small brothers and sisters. He was killed in the derailment of the engine, which is *prima facie* proof of negligence on the part of the company, and it was error to enter a nonsuit if the evidence upon the most favorable aspect thereof, or with the inferences which could be drawn therefrom by a jury, did not as a matter of law rebut the presumption of negligence.

In *Marcom v. R. R.,* 126 N. C., 200, it was held: "Where the derailment of the engine resulted in the death of the intestate, a fireman in the employment of the defendant, a *prima facie* case of negligence is to be inferred, and the burden is thrown upon the defendant to disprove negligence on its part." This has been cited and approved in numerous cases cited at the end of that case in the Anno. Ed., and more recently in *Ware v. R. R.,* 175 N. C., 508; and in *Wallace v. Power Co.,* 176 N. C.,

562. The same principle is approved, 29 Cyc., 599; L. R. A., 1917, E, 143n, and 213n, and *ibid.*, 123n, and *Battle v. Lumber Co.*, 179 N. C., 112. Rev., 2645, also makes killing the bull presumptively a negligent act.

The train was going east and the death was caused by the derailment of the engine upon a straight track about three or four hundred yards east of where the train had cleared a little cut, and was caused by the train running over a large bull. The bull and cow were grazing on the north side of the track when first discovered by the fireman on the front engine; the cow was then going in the direction of the track. The fireman saw the cow and the bull as soon as the train came out of the cut. The cow was then going towards the track and crossed it. The fireman seeing that the cow had crossed in safety went to the other side and saw the bull look up and going straight towards the track, where the train struck him, causing the wreck.

The deceased was caught between the cab in which he was riding and the tender containing the coal and water and was burned by steam escaping from the boiler—a most painful and horrible death.

It is also in evidence that the train was running 15 miles an hour, and though there was evidence that the train could not have been stopped in time to avoid the collision, it has been held by this Court that the time within which a train can be stopped is a matter of which the jury may take cognizance as a matter of everyday observation.

However, the negligence of the defendant does not depend upon failure to stop the train, but when the cow was seen 400 yards off in a few feet— 15 or 20 steps from the track, and immediately afterwards the bull was seen following her, it was for the jury to say whether it was not negligence to fail to make him quicken his steps, or to divert him from crossing, by giving frequent blasts of the whistle and turning off the exhaust steam. On the contrary, it was in evidence by defendant's employees that no precaution was taken to prevent a collision with this big, heavy animal, either by slackening speed or blowing the whistle or turning off the exhaust steam, by which means the jury might have found that the animal could have been hastened when passing the track, or diverted from so doing.

There being a presumption of negligence from the derailment, which does not happen without a cause, it devolved upon the defendant to rebut this presumption, and prevent the frightful death which the young fireman suffered by being scalded to death by the steam while being crushed between the cab and the tender.

Bradshaw, the fireman on the front engine, testified that the bull was struck by the train three or four hundred yards east of the "White" cut, on a clear straight track, and without any intervening obstacles to obstruct the view of the engineer and fireman on the engine in front. And

that he actually saw both animals starting towards the track when the train was about 400 yards away, and they were then 15 or 20 steps from the track. He further testified that no signal or warning was given.

Captain L. E. Perry, the conductor in charge of the train, testified that no stock signal was sounded and no warning given. When asked what was the duty of the engineer when he observes cattle on the track, or about to go on the track, he replied that it was his duty to use all means in his power to keep the train from striking the cattle, and that they usually give what is called the stock signal, and also open the cylinder cocks (i. e., turn on the exhaust steam) and scare them, by that means and by his whistle. J. A. Cook, another employee of the defendant, testified that the method used for frightening livestock away was by blowing whistles, short, quick, loud blows.

This Court has often held that where the train is running upon a straight part of the roadbed in daytime, and cattle feeding near and crossing the road are actually killed by the locomotive it is negligence if the speed of the train was not lessened nor the usual mode of driving off stock by blowing the whistle and turning on the exhaust steam was not resorted to. *Snowden v. R. R.*, 163 N. C., 33; *Hines v. R. R.*, 156 N. C., 222; *Ramsbottom v. R. R.*, 138 N. C., 839; *Moore v. Electric Co.*, 136 N. C., 554; *Wilson v. R. R.*, 90 N. C., 69; *Laws v. R. R.*, 52 N. C., 468; *Aycock v. R. R.*, 51 N. C., 231.

Moreover, in this case the plaintiff's intestate riding upon the second engine, and having no control whatever over the movements of the train, was entitled to the same protection under the law as a passenger.

The evidence is that the animal was seen by the fireman from the train when it was 300 or 400 yards distant, and on a nonsuit the latter figure must be taken, and by the same rule the evidence that the bull was 15 or 20 steps from the track when he started across, running, must be taken at 15 steps. By proper and prompt use of the whistle he certainly could have been hastened up to run 15 steps while the train was running 400 yards.

It is argued that there was a slight curve and the engineer could not from his side of the cab have seen the animals, but there is evidence that the fireman did see them, and furthermore, in *Arrowood v. R. R.*, 126 N. C., 631, where this very objection is raised, the road was winding (and here it was nearly straight and a full view clear ahead), and the Court said, as to the duty of keeping a lookout: "On a straight track, the careful lookout of the engineer would ordinarily be sufficient, but on a winding mountain track, turning first to the right, then to the left, if the engineer could not see the track when the engine turned to the left, then it was his duty to have the fireman to look out forward on that side. The duty of keeping the lookout is on the *defendant*. If it

can keep a proper lookout by means of the engineer alone, well and good. If by any reason a proper lookout cannot be kept without the aid of the fireman, he should also be used. If by reason of their duties, either the fireman or the engineer, or both, are so hindered that a proper lookout cannot be kept, then it is the duty of the defendant, at such places on its road, to have a third man employed for that indispensable duty. In *Pickett v. R. R.,* 117 N. C., 634; *Lloyd v. R. R.,* 118 N. C., 1012, and a long line of similar cases, it is held that it is the duty of the defendant to keep a proper lookout. It is not held anywhere that such lookout as the engineer may be incidentally able to give will relieve the company, if that lookout is not a proper lookout." This case has been often cited. See Anno. Ed.

There is a very widespread and steadily growing consensus of opinion that the simplest justice requires that when an employee is killed, or injured, while in the discharge of his duties in a dangerous employment like this, and when there is an entire absence, as in this case, of any negligence whatever on his part, that the loss should be taxed against the great industry which he is serving, and not fall solely upon those dependent upon him. For this reason "Employees' Compensation Acts" have been enacted in nearly all the States, requiring compensation to be paid by the employing company even though the employee was negligent. Under the Federal Government, and in this State the statute now provides that even if the employee concurs in the negligence which caused his death or injury, this is not a complete defense, but the loss shall be prorated in proportion to the negligence of the employer and employee. Here there was no contributory negligence.

The derailment being of itself *prima facie* negligence, and the burden being upon the defendant to rebut it, the fact that the two cattle were seen 400 yards off when the freight train was moving only 15 miles an hour, that the cow was then seen moving towards the track, and that her companion would naturally be expected to follow, and could with proper outlook have been seen to do so, and when, after a short delay in further observation, he was seen to be doing so, it was evidence of negligence that this latter observation was not made sooner, and that the whistle or steam exhaust was not used to hasten his crossing or to turn him aside. Certainly there was no evidence whatever to rebut the double presumption of negligence arising from the derailment, and under Rev., 1645.

It took the train, running 15 miles an hour, nearly a full minute or 60 seconds to make the 400 yards before it overtook this animal, who would hardly have taken as long a time as that to make the 15 or 20 steps from his position to the point on the track where the train struck

him, if his steps had been hastened by sharp blows of the whistle repeatedly given, and the exhaust of steam.

Certainly this much effort ought to have been made to save the life of a human being upon whom a family was dependent, and to save him from the excruciating agonies of being scalded by escaping steam. The jury at least should have had opportunity to pass upon the question whether the presumption of negligence raised by the fact of the derailment was rebutted.

HOKE, J., concurs in this dissenting opinion.