M. A. JAMES v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 7 October, 1914.)

1. Railroads — Animals — Negligence — Statutory Presumptions — Geese—Common Law—Trials—Burden of Proof.

No presumption of negligence against a railroad company is raised by the mere fact of killing fowls, etc., upon its track in the operation of its trains. Revisal, sec. 2645, makes it *prima facie* evidence of negligence in respect only to "cattle and other live stock," which does not include "geese" or other fowl within its terms.

2. Railroads — "Geese" — Judicial Notice — Negligence — Signals— Trials—Evidence—Nonsuit.

From the phlegmatic disposition of geese, the blowing of the whistle or ringing of the bell is not calculated to make them run or fly to leave the track, as turkeys, a nervous fowl, would do; hence, in an action to recover damages against a railroad company for the killing of geese upon its track by its train, it is not sufficient to submit to the jury, upon the question of defendant's negligence, evidence merely that the geese were killed upon the track by the defendant's train, and that its employees did not sound the whistle or ring the bell of the locomotive. *Lewis v. R. R.*, 163 N. C., 33, cited and distinguished.

HOKE and ALLEN, JJ., dissenting.

APPEAL by defendant from *Daniels, J.,* August Term, 1914, of PITT.

*Julius Brown for plaintiff.*
*Harry Skinner and L. G. Cooper for defendant.*

CLARK, C. J. This is an action tried in the Superior Court on appeal from a justice of the peace for the negligent killing of nine geese—four at one time and five at another. On one occasion the geese were in the field by the railroad, and after the train passed the plaintiff found four geese killed. On another occasion the geese were near the railroad track, and after the train passed five were found killed. The point where these geese were killed was at a slight curve in the track about 100 yards from a farm crossing. No witness saw the geese when they were killed, on either occasion.

There was no presumption of negligence. Revisal, 2645, provides: "When any cattle or other live stock shall be killed or injured by the engines or cars running upon any railroad, it shall be *prima facie* evidence of negligence on the part of the company in any action for damages," if the action is brought within six months. This expression, "any cattle or other live stock," cannot be construed as applicable to geese or other fowls.

There was no evidence of negligence unless it can be drawn from the testimony of the plaintiff that the whistle was not blown and that the bell was not rung. It is probable from above evidence that the geese stepped on the track so close to the engine that the engineer could not have avoided killing them, and the burden was upon the plaintiff to show that he could have prevented it with proper care. The mere fact that the whistle was not sounded nor the bell rung, if such was the fact, is not sufficient evidence, taken alone, to have gone to the jury in this case.

The plaintiff relies upon the "turkey case," *Lewis v. R. R.*, 163 N. C., 33. But the two cases are very dissimilar. In that case the evidence was that the turkeys could have been seen at a distance of 500 yards; there was quite a drove of them, and they were crossing the track. The turkey is a nervous fowl, and the jury might well have found that if the whistle had been blown the turkeys would have taken wing or have run, and therefore we held that it was error to enter a nonsuit.

Geese, however, are phlegmatic and slow of movement, and the blowing of the whistle or ringing the bell would not be calculated to make them run or fly. On the contrary, the approach of the train would be more likely to cause them to huddle up in conference or to stretch out their necks to oppose the passage of the engine. In the absence of evidence showing circumstances of actual negligence, the mere fact that the whistle was not blown or the bell rung did not authorize the court to submit the case to the jury. In this case there is testimony that the geese could have been seen 300 yards, but there is no evidence that when the engine was that distance the geese were on the track, but rather that they were in the field or outside the track.

Certainly the court should have given the instruction asked by the defendant: "The burden of proof is upon the plaintiff to satisfy you by the greater weight of the evidence that defendant's engineer failed to sound any alarm or whistle upon the approach to the place where the geese were killed; and you must further find that the engineer could have seen these geese by keeping a reasonable lookout, and that the failure to sound the whistle or alarm was the proximate cause of the damage—that is, if the alarms had been sounded the damage would have been avoided; and unless you so find the facts, you should answer the first issue 'No.' "

We find in the excellent brief of defendant's counsel that this point has been before the Court in another State. In *R. R. v. Davis*, 78 S. W., 1050 (Tenn.), it was held that "a goose is not an animal obstruction within the application of the statute requiring the alarm whistle to be sounded and the brakes to be set to prevent an accident when an animal obstruction appears on the track." Cited 33 Cyc., 1164.

"In the absence of recklessness or common-law negligence, the railroad company is not liable for the killing of geese permitted to run at large while trespassing on the railroad track." *R. R. v. Davis, supra.*

The court charged that, "It was the duty of the engineer to keep a reasonable lookout, and if he saw these geese on the track, or approaching the track, or negotiating any such movements as if they were likely to go upon the track, then it was his duty to give some signal." There was no evidence of such state of facts. For all that appears, the geese waddled on the track just ahead of the engine. But if it were shown that they were on the track when the engine was 300 yards off, yet from the nature of the fowl is there any reason to assume that if the signal had been given they would have gotten off the track in time? They have too much dignity or are too combative to flee promptly from danger. Besides, as Mr. Cooper well observed in his argument, "Can the engineer determine what are the negotiations of a· flock of geese in a field, or even on the track, when they put their heads together?"

The difference between the characteristics of a turkey and of a goose is a matter of common knowledge. The turkey is long-legged, quick of movement, and promptly responsive to a signal of danger. The goose is short-legged, slow to fly or run, and resentful rather than appreciative of a warning of danger. Though of equal intelligence, probably, with most other fowl, this has made its name a synonym for stupidity. While a turkey on the track would be likely to save itself by flight if the whistle were sounded in time, geese would be likely to put their heads together, or at most waddle down the track away from the noise. In the absence of proof of recklessness or wantonness, the defendant was not liable. *R. R. v. Davis, supra.*

In *Moore v. Electric Co.,* 136 N. C., 554, the Court held that notice should be taken of the characteristics of a dog, and it was not required that motormen in charge of these cars should exercise the same degree of care to avoid running over a dog that the law requires of them to avoid injury to other animals. The Court in that case said that dogs "are known ordinarily to be able to take care of themselves amidst the dangers incident to their surroundings. Where a horse or a cow or a hog or any of the lower animals would be killed or injured by dangerous agencies a dog would extricate himself with safety." The quick intelligence of the dog and the stupidity of the goose are alike natural evidence, known of all men.

We would not be understood as holding that a railroad company would not be responsible for killing geese, if negligence was shown, but we do not think that there is evidence of negligence when nothing appears except the fact that the geese were killed by a passing train and no whistle or other alarm was sounded. As to "cattle or live stock," the statute raises a *prima facie* case of negligence from the fact of killing. In the turkey case the long distance at which the flock of turkeys could be seen and the nervous and alert character of that fowl was evidence sufficient to forbid a nonsuit and to require that the case should be left to the jury on the issue of negligence.

Certainly as to automobiles and other private conveyances there would be less evidence of negligence required than as to

a railroad train carrying passengers and mail, or even freight for the public. The latter are not required to stop except under such circumstances as make it negligence not to do so. The former go slower, and can stop more readily or swerve from the track to avoid killing geese or chickens. But even they may chance to kill when guilty of no negligence and hence without liability.

We are cited to the classic legend in Livy (Book V, ch. 47) when Rome was saved by the cackling of the geese on the Capitol. A great painter has memorialized the scene. This, however, was not due to the alertness of these birds to flee danger, but to their well known wakefulness at night. If the Gauls had blown their trumpets, the geese, instead of promptly getting out of the way, would simply have raised more clamor and hissed the warriors on both sides.

There was not sufficient evidence of negligence to submit the case to the jury, and the nonsuit should have been granted.

Error.

Hoke and Allen, JJ., dissent.